In the matter of the estate of STAFFORD R. W. HEATH, deceased.

1. In actual practice, to audit an account is to see that the accountant is charged with everything with which he is justly chargeable, and that nothing is placed on the credit side of the account for which he is not justly entitled to credit, and then, after the debit and credit are thus made up, to ascertain the balance remaining in his hands.

2. Simply transferring the balance shown by a prior to a subsequent account, is not an auditing of the sum transferred.

3. In computing the amount of an estate, for the purpose of fixing the fees of a surrogate, under the statute of 1890 (*P. L. of 1890 p. 250*), for auditing and reporting an account, the balance transferred from a prior account should be excluded

---

On application to fix and settle fees of register.

*Mr. John R. Emery,* for the executors.

*Mr. William Y. Johnson,* for the register.

THE VICE-ORDINARY.

The question to be decided in this case arises under a statute passed in 1890 and another passed in 1891. By the first it is

enacted, in substance, that the fees of surrogates for auditing and reporting accounts, shall, on estates exceeding $50,000, be at the rate of one-tenth of one per cent.; provided, however, that such further fees may be allowed in any case as the court shall think reasonable. *P. L. of 1890 p. 250.* The second provides that the register of the prerogative court, for all official services, shall be entitled to charge and receive the same fees as are now allowed by law to the surrogates of the several counties of this state for like services. *P. L. of 1891 p. 571.* The will of Stafford R. W. Heath, deceased, was proved before the ordinary, and his executors have, in consequence, had their accounts audited by the register of the prerogative court and allowed and confirmed by the ordinary. Their first account was filed in March, 1890. The amount of the estate, as shown by that account, exceeded $688,000, and the account also showed that, after crediting the executors with all proper allowances, there remained a balance in their hands slightly in excess of $297,000. Since then four other accounts have been allowed and confirmed—one in December, 1890; another in December, 1891; another in January, 1893, and the last in April, 1894. The balance of over $297,000, shown by the first account, has been carried into each of the subsequent accounts. This balance, when added to the moneys received subsequent to the filing of the first account, made the executors chargeable, when they exhibited their last account, in April, 1894, with a sum a little in excess of $368,000. This $368,000, less $43,594.54, is a mere aggregation of the balances shown by the four previous accounts.

Now, on this state of facts, it is claimed, on behalf of the register, that he is entitled, under the statutes above referred to, for auditing and reporting the last account, the one-tenth of one per cent. on $368,000, or the sum of $368; while the executors insist that the balance carried from the preceding account into the last account constituted no part of the estate accounted for by the last account, but represented that part of the estate which had been accounted for in the previous accounts; that such balance had been ascertained by the auditing of the previous accounts, and that the register did not, and could not, when

Heath's Case.

he came to deal with the last account, do any work in the way of auditing that part of the estate, but that all he did respecting it was simply to add it to the debit side of the last account, so that that account should show, not only what the executors had received and paid out since their last previous accounting, but also the total amount of the estate remaining in their hands.

The rule regulating payment, prescribed by the statute of 1890, is a purely arbitrary exaction. It is not compensation according to the value of the work, but the one-tenth of one per cent. must be allowed whether the work occupies ten days or ten minutes, and whether the work is fairly worth the sum which must be allowed or only an infinitesimal part of it. For auditing and reporting the account of an estate of $500,000, consisting of twenty items or less, the surrogate is entitled to $500, though the actual value of the skill and labor bestowed is worth less than $5. It is obvious that the effect of a statute which imposes burdens in this arbitrary manner, and without the slightest regard to benefit, should not be enlarged by construction. As the legislature cannot compel one citizen to give his property to another, it would seem logically to follow that it is not within its power to ordain that the estates of decedents shall be required to pay a particular class of public officers $50 for a service which is not reasonably worth $1. To earn the fees given by the statute, a surrogate must both audit and report. The words of the statute are "for auditing and reporting." Nothing is given for merely reporting, but to be entitled to the fees allowed it must appear that the surrogate has not only reported the account but also audited it. To audit an account is to examine and digest it, or examine and verify it, or examine and adjust it. In actual practice, to audit an account is to see that the accountant is charged with everything with which he is justly chargeable, and that nothing is placed on the credit side of the account for which he is not justly entitled to credit, and then, after the debit and credit are thus made up, to ascertain the balance remaining in his hands.

Adopting either of these definitions as a correct exposition of what is meant by the word "auditing" in the statute under con-

sideration, it would seem to be perfectly clear that the register did not, and could not, audit that part of the last account which is made up of the balances shown to be in the hands of the executors by their previous accounts. The work of auditing in respect to that part of the estate has been previously and finally done, and the balances ascertained by such auditing were, by the decrees of allowances and confirmation, conclusively settled and adjudged against the executors. Such adjudications constitute judgments which, so long as they remain in force, must be treated as absolute verities. And it is also true that those parts of the testator's estate which are embraced in and covered by the accounts which have already been allowed and confirmed, must be considered, except in an appropriate proceeding founded on fraud or mistake, as finally and conclusively settled. The accounts respecting them have been finally audited, and the accuracy, honesty and fairness of the accounts established by the judgments of a competent court. So long as those judgments stand, neither the accounts nor any item in them can be audited by anybody. The accounts must be treated and considered everywhere as finally and conclusively settled. If simply transferring the balance shown by a first account to a second should be held to be auditing of that part of the estate represented by such balance, this result would follow, that part of a testator's estate represented by the balances thus transferred, instead of being required to pay fees for auditing once, might be required to pay them twenty times or more. For example, in this case the balance carried from the first account to the second was over $297,000, the same sum constituted a part, and much the larger part, of each subsequent balance, so that if merely transferring these balances constituted an auditing of that part of the estate, then this part of the estate has been audited five times and the fees payable thereon would amount to nearly $1,500. No argument is required to prove that there is nothing whatever, either in the language or purpose of the statute of 1890, giving the slightest support to a construction of it which would lead to a result so unjust and oppressive.

Heath's Case.

The register is entitled to fees for auditing and reporting the accounts filed in December, 1891; January, 1893, and April, 1894, but the amount of his fees must be calculated on the amount of the estate charged for the first time against the executors in each of these accounts. That amount appears to be $153,450. The fees of the register must, therefore, be reduced from $368 to $153.